AFTER hearing the case, Chancellor Waties de-the following decree:
I will briefly state the material facts on which I , ,. „ . . ... shall loirnd my opinion m this case.
*483 The complainants became bound as securities to Ed-wits Gardiner in a bond to the ordinary of Charleston district, for the due administration of the goods and effects of Alexander Shiras, who died indebted in a considerable amount to the defendants.-
Gairdner having failed to return into the office of the ordinary, an inventory of the estate of Shiras, or any account of his administration, the defendants procured an assignment of the administration bond, sued the complainants, and obtained a verdict against them for g SOOO. The complainants have brought this bill to he relieved against the verdict on the grounds, that Gairdner was the confidential and general agent of the ° ° defendants, that he was authorised by the ample powers given him by a letter of attorney from the defendants, and by their own construction of those powers to minister on the estates of any of their deceased debtors, whenever their interests should require it; that he had admipistered on the estate of Shiras, in the capacity of their agent, and that the complainants had became his securities to the ordinary in order to serve the interests * of the defendants..
It appeared from a letter of Gairdner’s to the defendants, that he had before administered on the estate of one Manly, and he therein informs them that he had done so, on their account, and requests that they furnish him with a special power to administer for them whenever the case should require. In their answer, to this letter, dated the 18th of July, 1800, they express themselves in these words, « a power of attorney shall be sent you as recommended, but there are such from E. Penman, in ’95 and ’96, which ought to be amply a v sufficient to justify you in every attempt to secure and take charge of our interest.” And in another letter to Gairdner dated 19 July, 1800, they say, “this serves 'only to hand you the power of attorney which, you wished, we should forward, we trust it will answer the purpose intended.” This power of attorney was not pro-duccd. The only one given in evidence, was one dated *484 the 5th of February, 1798, which contained only the. usual general powers ,• hut the ordinary certified that Mr. Gairdner, on his application for letters of administration on the estate of Shiras, took out a citation as at-,, torney to the principal creditor,
>jqie defendants in their answer have denied that they ever authorised Gairdner to administer in their behalf, on the estate of Shiras : that they did not understand that the general powers given him, by their letters of attorney, authorised him to administer on the estate of any of their debtors, who should die intestate ; that they believe that Gairdner administered on Shiras’ estate, on his own account, and to secure his own debt due to him from Shiras; in proof of which, he had taken to himself all the emoluments incident to his administration, and had given them no credit for the same, which he would have done, if he had been administrator in their right, It appeared from the books of Gairdner, that Shiras was in his debt about $ 7000 & from the cei'tificates of the cashiers of the two banks, that Gairdner had taken up notes of Shiras after his death, to the amount of $ 6300, On the other hand it ■was proved by a witness who said he was well acquainted with the concerns of Shiras, that these were chiefly confined to dealings with the defendants, who were his principal creditors, and he believed his only creditor. That Shiras did some business in the bank, and that Gairdner was his indorser, but that Gairdner borrowed from him two notes every week.
On these facts it was contended for the complainants that Gairdner should be regarded as the agent of the defendants in this administration, and that therefore they ought not to be liable to the defendants for his mal-ad-jninistration, for all his acts were virtually the acts of the defendants themselves. The question arising out of this caséis certainly a novel one, for no cases were cited, and probably none can be found, in which a similar oije has before occurred. It must therefore he decided on general principles. I was at first so strongly impressed with the obvious hardship on the side of *485 {he complainants, that I felt disposed to seek for any ground in the case which would justify me in giving relief, and if it had appeared, from the evidence, that Gairdner had become the administrator of Shiras, solely to serve the defendants, that the complainants had been induced to become his securities with the same .view only, and that the defendants had explicitly autho-rised him to administer for them, so as completely to identify themselves with him, and to make all his acts their own, I should not have hesitated in giving the rer lief prayed for by the complainants ; for otherwise it would be permitting the defendants to take advantage of their own wrong. But such a strong case has not. been made out by the evidence, and the facts and circumstances are so equivocal that I feel bound' to decide the case on legal grounds only.
And first. It has not been sufficiently proved that Gairdner administered on Shiras’ estate, solely on account of the defendants. There are indeed strong circumstances, to induce such a belief j but these are opposed by other strong circumstances to the contrary., I do not lay any stress on the evidence furnished by the books of Gairdner, for it was proved, that these held out to his creditors the monstrous illusion of a balance of g 400,000, when the fact is, as it has since appeared, that in every settlement of his transactions the debits have been found against him; and with respect to his paying the notes of Shiras due to the hanks, there is reason to believe that these, although apparently the debts of Shiras were in fact his own, thus disguised, to obtain a fuller credit for himself. But although Shiras was not indebted to Gairdner, and this formed no motive for his administering, yet there were other circumptan- . ces, which it must be admitted, furnished the strongest; ‘possible motives. Gairdner w?is at the death of Shiras, liable to the banks as the indorser of Shiras, and whether on his own account, or that of Shiras, makes no difference; he was besides on the brink of bankruptcy, .&ad without referring to his general conduct on that oq~ *486 cas*on’ ^ may fairly presumed, that in this particular* case’ the fimtls of Shiras presented a strong temptation io administer on them, as it has since appeared that lie applied them to his own necessities.
Secondly. There has been no proof that the complai-naris were induced to become the securities ©f Gaird-ner, for the purpose of serving the interests of the de-t fendants. Gairdner it was proved was at that time in the highest credit; and there is no reason for believing that the confidence of the complainants in him, was founded on the credit of the defendants.
But thirdly. Although it should appear that Gaird-ner administered on the estate of Shiras, for the exclusive benefit of the defendants, and that the complainants became his securities on their credit, yet there is another ground in the case, which appears to me to present a greater obstacle than any other to the relief prayed for by the complainants ; and this is the want of sufficient proof that the defendants did in fact authorise Gairdner to represent them as an administrator.
It was insisted for the complainants that the general powers contained in the letter of attorney to Gairdner was produced, which authorised him, under the construction given to them by the defendants, to administer for them on the estates of any of their debtors when their interests should require it. This construction of his powers is not in my opinion warranted either by the usual : ;id proper meaning of them, or by the letters of the defendants which have been relied on. Gairdnei* Was no uoubt their general agent, and a highly confidential one ; but the powers given to him cannot by any fair construction be made to extend to such an extraordinary agency as that of administering for his constituents on as many of the estates of their decéased debtors as he might choose. The general power granted by the most ample letters of attorney can extend to the employment of such legal means as the principal would himself have a right to employ for the accomplishment of his business. But what right had the defendants- *487 themselves to administer on the estates of their deceas ■ ed debtors ? As creditors they had no such right. The granting administration to any persons except the next of kin, is expressly committed by our law to the discretion of the ordinary. How then could the defen-dauts convey to their agent a power which they selves did not possess ? It is indeed said in Toller’s Law of Executors, page 79, which was relied on as an authority ,for the complainants, “ that an administration may be granted to the attorney of all the next of kin, or of all the executors, provided they reside out of the Province.” This can mean nothing more than that an administration may be granted, durante absentia, to the agent of those who have a right to it by law. But the present case is essentially diíferent; it is not a provisional administration, granted to Gairdner, during the absence of the defendants i and it was not granted to him in their right, for they possessed none. It does, not indeed appear to me that the right to an administration can be delegated in any case ; even where the King, as ultimus brnres of a bastard, transfers his claim by letters patent, it is said in the book before quoted, “ the ordinary grants administration to the patentee, rather out of respect to the King than strictly of right.” An administrator is called the officer of the ordinary 5 he is appointed by him and becomes a trustee for the next of kin, & for all the creditors of the intestate ; he therefore gives bond to the ordinary with security for the due performance of this trust. How then could he be said to he the agent of any private constituent, and especially of persons who had no right to the administration themselves ; and therefore could not depute him, as their representative in the office. But it was contended (and this is the only ground on which the complainants could prevail,) that the defendants intended to vest in their agent, Mr. Gairdner, this extraordinary power ; and although they had no right to do so, yet that with respect to their own claims on him as an administrator, they ought to bear the loss occasioned by his mal-administra» *488 tíon, and not liis securities, the complainants. I havg-already said that the words of the letter of attorney do admit of this construction, and I do not think that the letters of the defendants can fairly be understood in this extent. It is not reasonable to believe that the de-C0llj(j have intended to make themselves responsible to all the creditors of their deceased debtors, ort whose estates their agent might administer. For if he is to he regarded as their representative in an administration, they must be bound by all his acts as such. His bond to the ordinary must be considered as their bond, and 1ns responsibility to the next of kin, and to all the creditors of an intestate must be their responsibility j there can he no discrimination in his agency, as it respects their debts and the debts of other creditors. If the complainants therefore were to be discharged from' the demand of the defendants because Gairdner was their agent in the administration', they might for the same reason compel the defendants to indemnify them against the demands of the next of kin or any other creditors of Shiras 5 and on the same ground Gairdner might have made them liable in other administrations to any extent. It is not credible that this could have been their intention. But why, it may he asked, did Gaird-irer require a power to administer, and why did the defendants write that they had sent him such a power 2 I think it a sufficient answer to say that an administration is sometimes productive of only fruitless expenses and it was a proper caution in Gairdner to require the sanction of the defendants for such a measure, that he might be authorised to charge them with the expenses. I have no doubt that it was also intended to render an administration subservient to the interests of the defendants ; but this could not convert it into á private agency. Gairdner as an administrator assumed a distinct Capacity ; his duty ás such was entirely separate from It is general duties as- an agent 5 it was a personal and in some degree a public one. He derived his authority from the ordinary, and the security given for his faith- *489 íiil administration was required by the law, and not by the procurement of the defendants. As this is a general security for all the Creditors of Sidras, and the complainants musthaveso understood it, andas they have not established any facts which should entitle them to relief, Í am bound to say that the defendants must have tlie benefit of this security as well as any othei creditor. It is therefore ordered and decreed that the injunction he dissolved, and the complainant’s bill be dismissed with Costs.
Thomas Waties;
March 7t 18 IS.
From this decree an appeal was made oh the behalf of Moodie and Black, the complainants :
1. That as Ed\yin G-airdner, as attorney for the defendants, under the powers admitted arid proved, would, have had a right to sue for and recover from any other person that might have administered on S'hiras’ estate,; the amount of defendant’s debt, (supposing assets sufficient to pay it,) so he had a right, being administrator himself to retain it, and that any assets liable for defendant’s debt that came to his hands were equivalent to a payment to him for defendants, and payment to him for them was equivalent to a payment to themselves. And also, inasmuch as the sureties of any other admin-, istrator that might have been appointed, would not have been liable for any misapplication of the defendants* debt, if paid to him by such administrator,.in like man-? ner his sureties cannot be liable for the misapplication of assets which he had the same right to retain in the' one case that he would have had to receive in the other § and that the circumstance of the verdict’s having been, for a breach of the condition of the bond, in not returning an inventory and appraisment of the assets, and rendering an annual account of his administration cannot vary the equity of the case, as such neglect on the part of the adm’r cannot give to creditors- higher claims *490 on him than if he had actually received and wasted the assets~
2* That the correspondence of defendant’s and the certificate of the ordinary conclusively prove that Gaird-ner in administering on Shiras’ estate acted under the Ce.jmmec|jaj.e auj;j101.jfy a31(j explicit instructions of the defendants, and that his administration as far as concerned the interests of the defendants ; was as their own act, for any injury from which they are not entitled to in'demnity from the complainants, and that although the complainants might not be exonerated from the claims 'of other creditors of Shiras, it is repugnant to the prin'cipal and law of equity that they should be liable to the defendants for a breach of trust resulting from their -own confidence, and acts which they themselves had -empowered,
3. That under the special power to administer' whatever assets came to the hands of Gairdner, and were liable to the debts of defendants, were as payment of the 'debt to defendants themselves.
■4. That it is contrary to equity that the defendants ¡should recover damages from the complainants for any waste or neglect by Gairdner, from which defendants may have suffered, because they enabled him to do the •injury, and without their appointment of Gairdner as attorney, the ordinary would not have granted him the administration j and also because they stood in the way •of complainants preventing his waste, as with the plenary powers he had to receive their debts and manage their concerns, this Court would not in the face of them, have -suspended the' powers of Gairdner, as administrator, for not discharging his trust to defendants on any application from complainants.
5. Because the decree is in other respects contrary to the law of equity.
The appeal came to a hearing before the Court of Áp- . presen<¡ Chancellors Jambs, Thompson-, De-saussubb, GaibüaRb and Waties.
Mr. Simon's, for appellants.
Gairdner demanded that a power of attorney from Penman, Shaw and Co. should be sent Jo him to recover debts from their debtors in Carolina, with power to administer on the estates of intestate debtors ; they promise they will send such a power; there were such powers in 1798..
The reasons of the decree apply to other creditors of; •Shiras, the intestate, hut not to the case where the administration was taken out by the confidential agent of JPenman, Shaw and Co. His acts were theirs, and his abuse of the administration was their abuse, and therefore the securities in the administration-bond ought not to be liable to his acts in relation to Penman,. Shaw and Co. though as to other creditors they would be so..
Suppose some other person had administered, and-Gairdner as attorney for Penman, Shaw and Co. ha&< received the money from the administrator, and then-wasted it, it would have been the loss of the principal,. Penman, Shaw & Co..
As administrator he had a right to* retain what was,, due to himself, in his. own right,, op- as attorney for some-other creditor..
The power cannot be doubted',, and the probability is-that the securities were induced to become hound to favor defendants^ views.
The latter of the 19th July, 1804, from Penman,. Shaw and Co. says, <£we have sent such a power as you want.” This must refer to the power- to. administer on, their debtor’s estates,
Gairdner administered as attorney for the- principal; creditors, Penman, Shaw and Co.
As to Gairdner’s administering on his own account as. creditor, the evidence is against the allegation for he-does not appear to have been a creditor.
Then he administered for the principal creditor», and' the securities were induced to become securities on account of Penman, Shaw and Co. to favor their wishes, that the administration should be granted to their friend. -and agent. Penman, Shaw and Co, reposed the- confidence in Gairdner, and he who trusts most must suffer. J 7 most*
It is not certain that if Gairdner had neglected to rer turn an inventory, there would have been assets enough. in his hands to pay the debts of Shiras. At all events cage js no£ s(;ronger tiian jf there had been a waste. of assets ; and if there had been such a waste, then tin?, money came unto Gairdner’s hands, who should have re-, Gained it for Penman, Shaw and Co.
Mr. Heath, for respondents.
There was not sufficient evidence of the power from Penman, Shaw and Co. to Gairdner. Administration is not a subject of delegation. There is no evidence of Móodie and Black being induced by friendship, interest or otherwise, to become securities for Gairdner, as administrator. Positive evidence that Black was the friend and supporter óf Gairdner.
A man may be the general agent of a principal creditor of an intestate, and yet he may be administrator of that intestate, and he and his securities liable to the principal creditor as well as the other creditors in case of wasting the assets.
Mr. FoRD, for respondents.
The attempt is to change the ground of the liability of administrator, and turn him from a public officer of known functions, duties and responsibilities, to a mere private agent, on a sort of equity difficult to discern or apply, and susceptible of great abuse and even perjury. Tins may be the case in the sheriff 's office and other public offices, and it would he very mischievous.
It is settled by the Court below that the ordinary, has an absolute discretion in granting letters of administration among creditors as stated hy Judge Waties anda-greed to by all the Judges.
There is not only no right in Penman, Shaw and Co. to the administration ; hut if there .were, there is no right in them to assign it.
It would be an unsettling the legal foundation of the responsibility of administrators.
The defendants here have a legal right, well establish-«d by a verdict and judgment. The present attempt is to shake this legal right so established, on a presumed and slight equitable ground.
The defendants had adequate remedy at law j for all the evidence had here, the complainants could have had at law. If they came for discovery, and obtain a discovery of facts which make out a valid equity, then relief would follow ; blithe has not obtained any discovery.
Gairdner represented himself as principal creditor of Shiras ; his books show it; and whether true or not, it. shews that he sought the administration in his own. name and right, and for his own benefit, and not merely as agent of Penman, Shaw and Co.
Buthe had higher interests j he was in distress, and wanted the command of money. .
’ Besides, Gairdner and Shiras were reciprocally endorsers for each other, and Jtwas his interest to get hold of the funds of the estate of Shiras.
All these things shew that Gairdner did not take out administration in right of Penman, Shaw and Co. •
Mr. Phistgie, for appellants.
The recovery at law was on strict legal ground. Shiras had other creditors besides Penman, Shaw and Co. some of whom might have had a preference, and others a right to come in c-qually and proportionality with Penman, Shaw and Co.
It is not easy to prove that Gairdner administered on account of Penman, Shaw and Co. Ho was not likely to speak of it to any hut those to whom it was necessary, to-wit, the ordinary, to obtain the administration, and to the securities to induce them to join in the bond, on account of Penman, Shavv and Co. lie declared to tha ordinary (as appears by his certificate) that he administered for the principal creditor ; then who was meant by the principal creditor ? Penman, Shaw and Co. It is certain and proved they were largo creditors j but the proof of other creditors has not been clearly made out, as to numbers or amount.
The letters do shew that the confidence of Penman, Shaw and Co. was unbounded, and that the taking on hi™ (Gairdner,) the administration was for Penman, Shaw and Co. as he was not a creditor himself.
The answer does not negative the charge of Penman, Shaw and Co. having given a power to Gairdner to ad- ... ,. ,, minister tor them.
it was proved in Manly’s case that Gairdner had administered merely for Penman, Shaw and Co.
The letter saying that Penman, Shaw and Co. would send out a power for a particular purpose, is itself a power ; at least as that was the intent, the Court can supply the defect, and will do so.
The letters ask for a power to administer, and ’tis agreed to be given, not for Gairdner’s purposes, but Penman, Shaw and Co. and that long before Shiras died.
Chancellors Jambs, Thompson- and Gaibx.au.d delivered the following decree as the judgment of the Court, reversing the decree :
Edwin Gairdner was the general agent in this country of Penman, Shaw .and Co. Gairdner and Co. wrote to them on the 25th of March, 1800, to this effect: «We must begyou will lose no time in forwarding a power of attorney, from Penman, Shaw and Co. dated 18 months or two years ago, including a clause to administer when, the case requires.” It can be witnessed by Inglis, who can prove it at any time. This Mr. Turnbull has recommended. In answer to this in their letter of the 11th of July after, Penman, Shaw and Co. say « a power of attorney shall be sent you as recommended ; but there are such from Edward Penman in 1795 and 17961 Which ought to be amply sufficient to justify you in every attempt to secure and take charge of our interest; and on the 19th of the same month, they wrote another-letter, saying «This serves merely to hand you the power of attorney which you wished we would forward, and we trust it will answer the purpose intended. Gairdner having received this power of attorney applied to the ordinary as attorney for Penman, Shaw and- *495 Co. for letters of administration on tlie effects of Sidras, who had died indebted to them, and took out a citation as their attorney. Gairdner entered into bond to the ordinary on the 4th of September, 1801, with Moodie and Black, as his sureties. They, Moodie and Black, have been sued on this bond, and a verdict obtained against them for a considerable amount. Gairdner is insolvent. These are the facts in the case.
Gairdner it seems thought it necessary to apply to Penman, Shaw and Co. for a power of attorney, containing a clause authorising him to administer when the. case should require. Penman, Shaw and Co. thought this power included in the general powers received by Gairdner from Edwin Penman in 1795 and 1796. Finding this not so, they sent a new power containing this clause : Their object was to enable Gairdner to recover the debts due to them in this country ; Gairdner could not administer without security j the object of Penman, Shaw and Co. could not be obtained without his giving it. Moodie and Black became Gairdner’s sureties, and by doing so enabled him to effect the purpose intended by Penman, Shaw and Co. by their power of attorney. It is said that Moodie and Black had great confidence in. Gairdner, and that they were not induced by motives of friendship for Penman, Shaw and Co. to join him in the administration bond. The application for administration was made by Gairdner, attorney of Penman, Shaw and Co. The citation shews it. Moodie and Black certainly had great confidence in Gairdner, and in the general wreck of his affairs suffered materially. Their joining in the administration bond, is also a proof of their confidence in him, for there can be no doubt that as his sureties they are liable for his mal administration to all' the creditors of Sidras, except Penman, Shaw and Co.
As to Penman, Shaw and Co. the equity is, that Moo-die and Black are through Gairdner their sureties. It would be against equity and conscience to make them liable to their principals, Penman, S. & Co. Moodie & Black stand in the same relation to them that they do *496 G-airdner, & Penman, S. co. are identified with Gaird*. ner- The distinction between the liability of Moodie and Black, for Gairdner’s acts to the other creditors of Shiras, and not to Penman, Shaw and Co. is an obvious one | it does not in any manner lessen the legal responsibility of administrators ; nor does it render Penman, Shaw and Co. liable for all Gairdtier’s acts. G-airdner is the administrator of Shiras, not Penman, Shaw and Co. We think the complainants entitled to relief^ and that the decree ought to be reversed.
(Signed,) W. Jambs,
W. Thomfsow,
Theo. Gaixiakd.,,.
To the above tho followiug addition was afterwards made :
On motion of Mr. PRingee, ordered that the decree made in this case on appeal on the 11th March, 1813, be explained by adding to tho end thereof these words « And that the judgment entered on record against complainants, on behalf of Penman, Shaw and Co. on the 16th of Feb. 1805, on the bond to Charles Lining bw perpetually enjoined.”
Chancellor Besausstjre delivered tho following opinion, concurring with the Court;
I have had great difficulties in making up an opinion in this case, and I am not entirely satisfied with tiie one which I have formed. But after much embarrassment I feel myself compelled to acquiesce in the opinion of a majority of the Court, with the restriction therein expressed. (Signed,) Herny W. Desaussurb.
12th March, 1813.
Chancellor Waties delivered- the following opinion, adhering to his opinion in tho Circuit Court:
As Í cannot after reviewing the facts in- this case, see them in any other light-than-1 have before done in the decree, although anxious to do so,.E think that tiie decree *497 plight lo be affirmed; I am glad however that á majority of the Judges have taken a stronger view of the evi-denco in favor of the crimjilairiants, for the equity is clearlv with them;
This case was-arguéd by Messrs; SxmMonb & Pkest* "tan for the appellants.
And by Messrs; Heath & Fe-au for the respondents,»
, {Signed,) Thomas Wastes;